## THE STATE v. A. S. BROWN, Appellant.

**Division Two, February 18, 1908.**

1. **WITNESS: Competency: New Trial.** Whether or not an eleven-year-old boy was competent to testify as a witness will not be determined on appeal, if the ruling of the trial court in that regard was not laid as a ground for a new trial.

2. **INCEST: Previous Acts: General Objection.** A general objection, in a prosecution for incest, to the admission of testimony of the prosecuting witness as to previous acts of the defendant, amounted to no objection at all.

3. ———: **Information: Defendant Unmarried: Surplusage.** In a prosecution for incest, an allegation in the information that defendant was a single man at the time of the alleged sexual intercourse with his daughter, was unnecessary, and, therefore, unnecessary to be proved, and may be regarded as surplusage.

4. ———: **Previous Acts: Instruction: No Exception: At Defendant's Request.** In a prosecution for incest, the action of the trial court in giving an instruction which confined the jury to one act of intercourse, and did not inform them to what extent and for what purpose they might consider other alleged acts of intercourse, is not for review, since it was not made a ground of the motion for new trial; and, besides, the instruction having been given at defendant's request, he is in no position to complain.

5. ———: **Insufficient Evidence.** Evidence held insufficient to support the verdict finding defendant guilty of incest with his daughter.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED.

*A. H. Harrison* and *Frank H. Farris* for appellant.

(1)    The court erred in the abuse of its judicial discretion in permitting witness Joshua Brown to testify, because he was incompetent, being a person deficient in understanding. 1 Greenl. Ev. (Redf. Ed.), pp. 413, 414; sec. 4659, R. S. 1899; Ridenour v. Rail-

road, 102 Mo. 288; State v. Nelson, 132 Mo. 198. (2) The testimony of Laura Brown with reference to previous acts of defendant ought not to have been admitted, because it does not detail any specific previous acts of unchastity by defendant nor refer to any particular time when any other alleged intercourse between them took place. State v. Prewitt, 202 Mo. 51. (3) The information having charged defendant to have been a single person, the State is compelled to prove the same to the same degree that it is required to prove · any other material allegation contained therein. 2 Greenl. Ev. (5 Ed.), p. 462; State v. Coffey, 39 Mo. App. 58; State v. St. John, 94 Mo. App. 229; State v. Cooper, 103 Mo. 266; State v. Roswell, 6 Conn. 446. (4) The instruction of the court, number 5, in confining the finding of the jury to the alleged act of intercourse in July, 1906, was not sufficient, in that it did not inform the jury to what extent and for what purpose they could consider any other alleged acts of intercourse or lascivious conduct between prosecuting witness and defendant.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) No error was committed in permitting State's witness Joshua Brown to testify. This witness testified that he was eleven years old, and the statute says that children under ten are presumed to be incapable of testifying. In other words, the witness was presumed to be old enough to appreciate his position and his duties. R. S. 1899, sec. 4659; State v. Nelson, 172 Mo. 198; State v. Doyle, 107 Mo. 42; Rapalje on Witnesses, sec. 7. No error was committed in allowing the State to prove by witness Laura Brown that defendant had sexual intercourse with her previous to the day in July, 1906, when they were seen by Joshua Brown. If error was committed, defendant is in no position to

complain, as he simply made objection to such evidence without giving any reason therefor, which is insufficient. State v. Adams, 108 Mo. 216. No error was committed in not limiting the State to any particular act of intercourse, as defendant's attorneys did not ask to have the State elect upon which act the State would rely for a conviction. Having failed to make such a request, defendant has waived the right now to complain. State v. Prewitt, 202 Mo. 51; State v. Palmberg, 199 Mo. 243. (2) The evidence that defendant was a single person was sufficient, especially in view of the fact that defendant offered no evidence to the contrary. Proof that a defendant has been lawfully married, and proof that he has been illegally married, may be made by the defendant's admissions, and so may proof of his divorce. State v. McDonald, 25 Mo. 179; Buchanan v. State, 55 Ala. 175; State v. Sanders, 30 Iowa 582; State v. Libby, 44 Me. 679; Com. v. Holt, 121 Mass. 61; State v. Medbury, 8 R. I. 543; Boger v. State, 19 Tex. App. 91; Wolverton v. State, 16 Ohio 173; 2 Greenl. on Ev., sec. 49. It is, therefore, earnestly insisted by the State that such an immaterial allegation in the information (as section 2172 makes no reference to married or single persons) is supported by evidence of defendant's admissions. (3) The record shows that instruction 5 was asked by defendant and given at his request.

BURGESS, J.—The defendant, at the June term, 1907, of the circuit court of Crawford county, was convicted of the crime of incest, under an information filed by the prosecuting attorney of said county, charging him with the commission of said offense with his daughter, Laura Brown, on the 1st day of April, 1907. His punishment was assessed at three years in the penitentiary. After filing unsuccessful motions for a new trial and in arrest, defendant appealed.

The evidence on the part of the State was to the following effect:    The defendant had been divorced from his wife some twelve years, and was living with his children, three sons and two daughters, in a one-room log house a few miles north of Bourbon, in Crawford county, Missouri.    In this single room the whole family of six persons lived, cooked, ate and slept. Laura, the defendant's oldest daughter, was seventeen years of age and unmarried, at the time of the commission of the alleged offense.    The two oldest sons, aged twenty-one and twenty years, respectively, worked away from home occasionally, but at the time in question they were living at home.    The prosecuting witness, Laura Brown, testified that the defendant had sexual intercourse with her, in the house, some time in July, 1906, and that the commerce was indulged in and continued from the time she was eleven years of age.    She stated that she knew it was wrong, that the neighbors and officers would have protected her had she made known the facts, and that the reason why she did not tell anybody was that her father did not want her to tell.    She further testified that her father had been strict with her, and punished her, that she wanted to get from under his care and control; that he had punished her a day or two before she made formal complaint against him, and that she and her brother John had planned to take charge of and run the place after her father had been arrested and put in jail.    She also testified that her father punished her for alleged misconduct with a man named Cain, and that she went with her father to a justice of the peace for the purpose of securing a warrant for the arrest of Cain on a charge of seduction under promise of marriage; but she denied having misconducted herself with Cain or with other young men. The prosecutrix was corroborated by her little brother Josh eleven years of age, who testified that on the afternoon of some day in July, 1906, while outside the

house playing with his little sister, he peeped through a crack in the log wall of the house and saw the defendant and his sister, the prosecutrix, lying on the bed in the performance of the sexual act. John Brown, the second son, about twenty years of age, testified that the family slept upon beds laid on the floor; that his father and two sisters slept in one bed, and he and his two brothers in another, and that part of the time the youngest brother slept with his father.

The testimony on the part of the defendant tended to prove that a short time prior to the issuance of the warrant against defendant, the latter, in company with his daughter, Laura, had applied to J. M. Johnson, a justice of the peace, for a warrant against one Cain on the ground of seduction, and that the justice asked the prosecuting witness if she had ever had intercourse with parties other than Cain, and she admitted that she had intercourse with the three Jost boys. Charles Hulsey, a deputy constable who assisted in the arrest of the defendant, testified that at the time of the arrest he asked the prosecuting witness why she wanted to have her father arrested, and that she replied that it was because he whipped her on account of her intimacy with one Cain; that she further told witness, in reply to questions, that she had had intercourse with Cain about seven times. Witness further testified that, afterwards, in a store in Bourbon, the prosecuting witness acknowledged to him that she had been intimate with a young man who worked in the store. All of these statements were denied by the prosecuting witness, upon cross-examination.

The defendant testified in his own behalf that he was fifty-two years of age, and had been engaged in farming near Bourbon, in Crawford county, since 1893; that his daughter admitted to him her intimacy with Cain, and that he had taken steps for the apprehension

and prosecution of said Cain; that the day before he, the defendant, was placed under arrest, he went to Sullivan in an endeavor to locate the man Cain.

Mr. Harrison, counsel for the defendant, testified as to the diligence used and the efforts made by him to locate Cain and secure his attendance as a witness at the trial of this case.

Several of the more prominent citizens of the county testified as to the general reputation of the defendant for truth, honesty and morals, the general tenor of their testimony being that they had never heard his reputation questioned.

The defendant contends that the court, in permitting witness Joshua Brown, over the objection of the defendant, to testify, committed error, on the ground that it was shown by the examination of the witness touching his understanding and capacity that he was incompetent to testify.

Among the persons incompetent to testify, under section 4659, Revised Statutes 1899, is "a person of unsound mind at the time of his production for examination." At common law every person of the age of fourteen years is presumed to have sufficient intelligence, discretion and understanding to testify as a witness, but under that age such presumption is not indulged, and therefore inquiry is made as to the degree of understanding which children offered as witnesses, may possess, and if upon examination touching his capacity, it be found that the witness has sufficient natural intelligence and has been so instructed as to understand the nature and effect of an oath, he is permitted to testify, whatever his age may be. [1 Greenleaf on Evidence (Redfield's Ed.), p. 413.] But the common law rule has been changed by statute in this State (sec. 4659, supra), so that, by implication at least, any child or person over ten years of age is prima-facie competent to testify as a witness; but if

shown upon examination to be of unsound mind, or 'not possessed of sufficient intelligence to stand the test indicated, at the time of his production for examination, he will not be permitted to testify, whether over or under that age.  As to whether the witness is possessed of sufficient intelligence to testify is a preliminary question for the determination of the court, and unless the conclusion reached is clearly erroneous this court will not interfere.  While, in our minds, it is exceedingly doubtful whether witness Joshua Brown had sufficient intelligence to testify in the case, it is unnecessary and profitless to pursue the subject further, as the ruling of the court, in this regard, was not laid as a ground for a new trial in defendant's motion therefor, and it is not the subject of review here.

It is insisted that the testimony of Laura Brown with reference to previous acts of the defendant ought not to have been admitted, for the reason that it does not detail any specific acts of intercourse or refer to any particular time when the alleged previous acts of intercourse between them took place.  The objection to this testimony was general, and amounted to no objection at all, and there was no error in admitting the evidence.  [State v. Adams, 108 Mo. 208; Margrave v. Ausmuss, 51 Mo. 567.]

We cannot admit the defendant's contention that, because the information charges that the defendant was a single man at the time of the alleged sexual intercourse with his daughter, Laura Brown, it was essential to the conviction of defendant that the State so prove.  The allegation was an unnecessary one, and, therefore, unnecessary to be proven, and may be regarded as surplusage.  The elements of the offense necessary to be alleged and proven were the sexual intercourse between the defendant and Laura Brown, and that she was his daughter.  Whether he was or was not a married man at the time is wholly immaterial.

Defendant insists that the court erred in giving instruction number five, in that it confined the investigation of the jury to the one act of intercourse alleged to have taken place in July, 1906, and did not inform the jury to what extent and for what purpose they might consider any other alleged acts of intercourse or lascivious conduct between the prosecuting witness and the defendant. But the exception was not preserved in the motion for a new trial, and the subject is not before us for review. Besides, that instruction was given at defendant's request, and he is in no position to complain.

The final question is, whether there was any evidence worthy to be called such upon which to base the verdict in this case. As reluctant as this court may be to interfere with the verdict of a jury which has been approved by the trial court, the law makes it our duty so to do when the exigencies of the case and the rights and freedom of a citizen seem to demand it.

The prosecuting witness, Laura Brown, upon whose testimony the verdict must stand or fall, is shown by her own testimony to be a very ignorant, illiterate and unruly girl, and, by her admissions to other witnesses who testified in the case, to be lewd and unchaste and unworthy of belief. She did not know the name of the county or State in which she lived, and the only reason given by her for not telling that the defendant had "courses" with her, as she expressed it, was that he did not want her to tell. She admitted to the justice of the peace before whom she went to make complaint against one Cain for seduction, and also to the constable who arrested her father on her complaint, that she had been criminally intimate with several young men in the neighborhood, and especially with the man Cain, all of which admissions she denied having made.

The following is taken from her testimony:

Q. Why was it that you did not tell anybody else what it was your father did to you along in July? A. Because I was afraid to.

Q. What made you afraid? A. He told me that he did not want me to tell it; that was why I was afraid to.

Q. What, if anything, did your father do to you before last July? A. He done me the same as before.

On cross-examination, she testified:

Q. Your father has been strict with you, has not he? A. Yes, sir.

Q. You want to get out from under his care, from under his control? A. Yes, sir, I do.

Q. You made this complaint shortly after your father punished you, did not you? A. Yes, sir.

Q. The next day, is not that true? A. No, sir; I don't believe that it was the next day.

Q. Well, the second day? A. It might have been the second.

Q. Did you not plan to have your father arrested and put in jail, and your brother was to take charge of the place and you and he were to run it? A. Yes, sir.

Q. That was the way you had it planned? A. Yes, sir.

She also testified that she never made any complaint to her neighbors about her father, although she knew that they would protect her if she did so; that the first person she made any complaint to was her brother John, and that was the evening before she went to Bourbon to make formal complaint against her father, which was about nine months after the time of the alleged intercourse with defendant.

It cannot be said that she was corroborated by her brother, Joshua, because his story is incredible and not of a feather's weight. Aside from his apparent want of sufficient intelligence to testify, it seems in-

credible that he, a boy only eleven years of age, could keep his own counsel so long, for he did not tell what he testified he saw until the evening before his sister went to Bourbon to lodge the complaint, or the same evening she told her elder brother about it. He testified that after looking through a crack in the wall of the house and seeing his father and sister on the bed, he continued his play with his little sister, and that although his brother John, a young man about twenty years of age, was at the time out in the barn feeding the horses, he said nothing to him about what he saw, nor mentioned it until the evening stated, which was between eight and nine months afterwards. His long silence can hardly be attributed to modesty, for at the trial he told his story with a brazenness wholly incompatible with any idea of modesty, and in describing what he saw, used words and terms of a type so gross as seldom to be met with in print.

The facts detailed in evidence strongly indicate that it was malice or ill-will against her father that prompted the prosecuting witness to make this charge against him and have him prosecuted, and when we consider this in connection with the bad character of the prosecuting witness, her failure to make complaint until a day or two after being whipped by her father, although according to her testimony the commerce had been carried on for several years in the same room where the whole family slept, her successful impeachment, and the good reputation of the defendant for truth, honesty and morals in the neighborhood in which he lived, we are constrained to believe that the girl's story was a fabrication, and are convinced that the verdict and judgment ought not to be permitted to stand.

Our conclusion is that the judgment should be reversed and the defendant discharged. It is so ordered. All concur.