State v. Manuel.

---

## THE STATE v. LUTHER MANUEL, Appellant.

Division Two, February 23, 1915.

1. **RAPE: Prejudice.** Convictions for sexual crimes committed on children and women are more often obtained on false testimony and prejudice than in any other class of cases, and for that reason courts carefully scrutinize the evidence, and where it is unsatisfactory will reverse the judgment. But they cannot ignore the fact that the jury and trial court possess better opportunity for measuring the varacity of the witnesses than does any appellate court.

2. ————: **Failure to Call Interested Witnesses.** The failure of the State to call the father or brother of the ignorant fourteen-year-old prosecutrix as witnesses, on the theory that one or the other may have debauched her, is not a sufficient ground for reversing the judgment, where she was not living at home when she caused defendant's arrest, and there is no evidence that she, her father or brother, or the other witnesses who befriended her, harbored any ill-will towards defendant.

3. ————: **Motive: Sufficiency.** The evidence in this case, which fails to reveal any motive on the part of the fourteen-year child, raised in ignorance, filth and poverty, to falsely charge the married defendant with statutory rape, is *held* sufficient to sustain a conviction.

Appeal from Pulaski Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*J. J. Crites* and *C. L. Morgan* for appellant.

There is not sufficient substantial evidence to convict the defendant, or support the judgment. State v. Parris, 259 Mo. 435; State v. Bass, 251 Mo. 126; State v. Donnington, 246 Mo. 354; State v. Young, 237 Mo. 170; State v. Miller, 234 Mo. 588; State v. Tevis, 234 Mo 284; State v. Goodale, 210 Mo. 290; State v. Brown, 209 Mo. 413; State v. Johnson, 209 Mo. 346; State v. Francis, 199 Mo. 671; State v. Gordon, 199 Mo. 561; State v. DeWitt, 191 Mo. 58; State v. Lockhart, 188 Mo. 427; State v. Swisher, 186 Mo. 1; State v. Scott, 177 Mo. 673; State v. Crabtree, 170 Mo. 642; Kelly's Crim. Law & Prac., sec. 541.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for the State.

(1)   Corroboration of the prosecutrix is not essential to sustain a conviction for rape. State v. Stockhouse, 242 Mo. 449; State v. Tevis, 234 Mo. 276; State v. Welch, 191 Mo. 179; State v. Ditts, 191 Mo. 665; State v. Day, 188 Mo. 359; State v. Marcks, 140 Mo. 656; State v. Goodale, 210 Mo. 282; State v. Wilcox, 111 Mo. 569; State v. Hains, 150 Mo. 56.   (2)   The evidence is sufficient to sustain the verdict. State v. Whitesell, 142 Mo. 467; State v. Hunter, 171 Mo. 440; State v. Wilcox, 111 Mo. 570; State v. Dusenberry, 112 Mo. 296; State v. Welch, 191 Mo. 181; State v. Marcks, 140 Mo. 656; State v. Campbell, 210 Mo. 234; State v. George, 214 Mo. 271; State v. Pipkin, 221 Mo. 464; State v. Devorss, 221 Mo. 473; State v. Skillman, 228 Mo. 436; State v. Lovitt, 243 Mo. 510; State v. Stockhouse, 242 Mo. 444; State v. Swain, 239 Mo. 727; State v. Bowen, 247 Mo. 584.

BROWN, J.—Defendant, a married man, was convicted of the crime of statutory rape, alleged to have been committed in Pulaski county, in December, 1913, upon one Eliza Bryant, a fourteen year-old girl. His punishment was fixed at five years' imprisonment in the penitentiary, and he appeals.

In his brief defendant relies for reversal solely upon the proposition that the evidence is insufficient to support the judgment of conviction. This assignment calls for a careful examination of the evidence, and we have performed that task with diligence.

The mother of the prosecutrix was dead, at the date of the alleged crime. Prosecutrix lived at Richland, Missouri, with her father, Dan Bryant, whose family was then composed of himself, two daughters and two small sons.

Prosecutrix was the only member of her father's family who was sworn on the part of the State. Her age was proven by neighbors who remembered that at or near the date of her birth her father was arrested on a charge of arson. Her father's house was so filthy that a physician refused to attend prosecutrix until she was taken to the home of a neighbor and given a bath.

The principal evidence of defendant's guilt comes from the prosecutrix, who testified that defendant came to her father's house while she was alone, gave her some whiskey, then threw her on a bed, pulled up her clothes and "done business with her." That he repeated this act three or four times thereafter. On August 6, 1914, she gave birth to an imperfectly developed child, which died within a few hours. Prosecutrix further testified that defendant was the father of her child, and that no other person did anything improper with her. She admits that she made no complaint of defendant's wrongful acts and refused for several months to tell anyone who was the father of her child because "she was afraid of her pa." She

stated that defendant told her to "lay it on" another
party.

Mrs. Lon Rowden, who lived a block from the
Bryant home, and at whose house the child was born
to prosecutrix, testified that she saw defendant at
Bryant's in both December, 1913, and January, 1914;
that on one occasion he seemed to be trying to slip into
the kitchen without being observed by the neighbors.

Mr. Lon Rowden testified that he went to the Bry-
ant home on one occasion and found defendant there
lying on a bed apparently drunk. Said witness could
not remember the date of this visit, but thought it
was in the summer or fall of 1913. Frank Hans, who
was constable at Richland during the summer and fall
of 1913, stated that on a date he could not remember
someone telephoned him from the neighborhood where
Bryant lived stating that defendant was down there in
a drunken condition, and that, being busy, he sent Lon
Rowden down there. Mr. Hans further stated that a
few days later he saw defendant and spoke to him
about being drunk at Bryant's, whereupon defendant
replied that he was not drunk, but was sick from eating
too many blackberries. On account of their failure to
fix the dates when they saw defendant the evidence of
Mr. Rowden and Mr. Hans is of very little importance.

Defendant was not sworn in his own behalf, but
introduced one Laura Bryant, an older sister of pros-
ecutrix, who at the time of the trial was living at the
home of defendant's father-in-law. She testified that
she was at her father's house during December, 1913,
all of January, and part of February, 1914, and never
saw defendant there during that time. Said witness
further stated that she saw prosecutrix in the act of
sexual intercourse with her brother Joe, a boy about
nine years old. That after prosecutrix became preg-
nant she told witness that her brother Joe was the fa-
ther of her child, and that she could not testify to any-

thing else without swearing a lie. Laura Bryant also testified that at defendant's preliminary examination she heard Mrs. Rowden tell prosecutrix "to swear just as she had told her to swear." This alleged statement of Mrs. Rowden's was denied by her, and the conduct and statements of prosecutrix testified to by Laura Bryant were denied by prosecutrix.

Two farmers testified for defendant that he resided on a farm about three-quarters of a mile from the Bryant home and worked for them pretty steadily during December, 1913, and January 1914; their evidence, however, indicates that he went to Richland a few times during that period. Two other neighbors of defendant testified that they tried to get prosecutrix to tell them who was responsible for her pregnancy, and that she declined to do so, but assured them it was not a married man who was responsible for her unfortunate condition.

There is no evidence that any man except defendant visited the Bryant home in December, 1913, or January, 1914, or that prosecutrix kept company with any man or boy during that period. The evidence indicates that prosecutrix and her father were on friendly terms with defendant up to the time she was confined.

I. Defendant insists that there is not enough substantial evidence to support the judgment of conviction, citing the following cases: State v. Parris, 259 Mo. 435; State v. Bass, 251 Mo. l. c. 126; State v. Donnington, 246 Mo. l. c. 354; State v. Young, 237 Mo. 170; State v. Miller, 234 Mo. 588; State v. Tevis, 234 Mo. l. c. 284; State v. Goodale, 210 Mo. l. c. 290; State v. Brown, 209 Mo. 413; State v. Johnson, 209 Mo. 346; State v. Francis, 199 Mo. 671; State v. Gordon, 199 Mo. 561; State v. DeWitt, 191 Mo. l. c. 58; State v. Lockhart, 188 Mo. 427; State v. Swisher, 186 Mo. 1; State v.

*Rape: Sufficiency of Evidence.*

Scott, 177 Mo. 1. c. 673; and State v. Crabtree, 170 Mo.
642. However, after carefully reading and rereading
the record we have reached the conclusion that the
judgment is supported by substantial evidence. The
prosecutrix was subjected to a rather rigid cross-ex-
amination, and while she could not remember the
month when the alleged crime was committed she did
remember that there was a little snow on the
ground when she was assaulted by defendant. This
evindence tends to support the charge that the crime
was committed in the month of December, 1913, as we
usually have snow at that season of the year. Her
testimony is not self-contradictory. On the contrary,
she gave her evidence in a straightforward manner;
except she seems to have been rather timid, but not ·
more so than one would expect of a child her age
raised in ignorance, filth and poverty. No·motive is
shown on the part of the prosecutrix to falsely charge
defendant with the crime of which a jury of his county
found him guilty, unless it be disclosed by the evidence
of her sister, Laura Bryant, who at the time of the
trial may have been, to some extent, under the influence
of defendant's friends, as she had deserted her so-
called home and was residing with the father-in-law of
defendant.

The facts in this case are not like those in State v.
Gordon, 199 Mo. 561, and State v. Bass, 251 Mo. 1. c.
126, where no one was called as a witness who saw the
alleged crimes committed; neither are the facts in this
record similar to those in State v. Brown, 209 Mo. 413;
State v. Donnington, 246 Mo. 343; or State v. Tevis,
234 Mo. 276, in each of which cases a motive for a false
accusation clearly appeared in the form of a strong
desire on the part of the prosecutrix to free herself
from the custody of the person charged with the sex-
ual crime. In those cases there was also strong evi-
dence of a general disposition on the part of the prose-
cutrix to be untruthful. It is undoubtedly true that

convictions for sexual crimes committed upon children and women are more often obtained on false testimony and prejudice than in any other class of cases, and we are justified in scrutinizing the testimony in this class of cases with great care and in reversing judgments where the evidence is wholly unsatisfactory. However, we may not entirely ignore the facts that the jury and trial court possessed splendid opportunities for observing the demeanor of the witnesses while testifying and ought to be better judges of their veracity than we are with nothing but their printed evidence before us.

It is urged that prosecutrix probably brought this charge against defendant to shield her father and brother, one or the other of whom may have been the guilty party, and neither of whom was called to testify for the State. This is the only real weak spot in the State's case, but we have reached the conclusion that we are not warranted in reversing the judgment on account of the failure of the State to call the father or brother as witnesses. [State v. Sykes, 248 Mo. 708, l. c. 714.] Prosecutrix was at the home of the Rowdens when she caused defendant's arrest, and there is no evidence that either the Rowdens, the father of prosecutrix or the prosecutrix herself harbored any ill-will toward defendant. The father of prosecutrix with the prosecutrix had made a friendly visit to defendant just a short while before his arrest.

We have examined all the cases cited by defendant's resourceful counsel, and many others, but find no satisfactory precedent for reversing the judgment, and it will therefore be affirmed. *Faris, P. J.*, and *Walker, J.*, concur.