THE STATE v. ANTON W. KOCH, Appellant.—10 S. W. (2d) 928.

Court en Banc, November 24, 1928.

*Earl E. Roberts, Homer Rinehart, James Booth* and *Virginia Booth* for appellant.

*North T. Gentry,* Attorney-General, and *J. D. Purteet,* Special Assistant Attorney-General, for respondent.

DAVIS, C.—The grand jury for Crawford County on February 20, 1926, returned an indictment against defendant in two counts. The first count charged him with arson, and the second count with aiding and abetting one Mitchell to commit arson. The charge related to a flour-mill building at Bourbon, Crawford County, owned by John and George Merkel. The jury returned a verdict finding defendant guilty and assessing his punishment at imprisonment in the penitentiary for a term of three years, defendant appealing from the sentence and judgment entered thereon.

The facts adduced upon the part of the State warrant the finding that at Bourbon, Crawford County, John and George Merkel, brothers, owned a certain building in which they operated a flour mill. About twenty-eight feet east of the flour mill George Merkel resided in a six-room house. About thirty-eight feet east of said house defendant owned a garage building in which he operated an

automobile-repair shop, and also slept. Between three-thirty and four-thirty A. M. on October 18, 1924, the flour-mill building of Merkel brothers was observed on fire. Two or three other buildings were also on fire at about the same time, either having been set on fire or having caught from the burning buildings. The people of the town and neighborhood gathered, attempting to quench the fires, but being unable to do so, the buildings burned to the ground and were "a tee-total loss," as a witness put it.

Defendant was not accused of the crime until more than a year had elapsed. He was indicted upon information given by one Henry L. Mitchell to the prosecuting attorney. It seems that a detective discovered evidence pointing to Mitchell's connection with the burning of the mill building. The testimony of Mitchell develops that, previous to setting the buildings on fire, defendant wrote him a letter saying that he wished to see him and would go to St. Louis, where Mitchell was then living, for that purpose. Upon hearing from Mitchell, defendant afterward went to St. Louis on two or three occasions, seeing Mitchell and importuning him to fire the buildings. Defendant promised to pay him fifty dollars. Mitchell, previous to the fire, promised defendant a time or two to set them on fire on a certain day, but failed to keep his promise. On the morning of October 18, 1924, about two-thirty A. M., without previous notice to defendant that he was then coming, Mitchell appeared across the street from defendant's garage, throwing rocks, probably about the size of an egg, at the door to awaken defendant. Defendant, on awaking, crossed the street and conversed with Mitchell. Mitchell stated he did not go to Bourbon for the purpose of setting fire to the buildings, but to see his father. On talking to defendant, however, he was persuaded, defendant giving him a pistol, pliers and a quantity of whiskey, some of which he drank. Thereupon around three-thirty A. M. or a little later, Mitchell set fire to the flour-mill building and the store building of one Bremer. In order that the buildings might burn more quickly, he saturated them with oil that he found where he said defendant had placed it in a cache for that purpose. After the fire, defendant met Mitchell by prearrangement in St. Louis, paying him the fifty dollars promised for setting fire to the buildings. Such other facts as are pertinent, if any, will appear in the opinion.

I. Inasmuch as the trial occurred after the passage of the Act of 1925, relating to motions for a new trial (Sec. 4079, p. 198. Laws 1925), prescribing that the motion shall set forth in detail and with particularity, in separate numbered paragraphs, the specific grounds or causes therefor, the questions to be discussed are limited to the sufficiency of the evidence

and the admission of specific evidence. [State v. Standifer, 289 S. W. 856; State v. Murrell, 289 S. W. 859; State v. Vesper, 289 S. W. 862.] However, errors appearing in the record proper are always open to review, but as none appear in this record, we dismiss it from further consideration.

II. Defendant challenges the sufficiency of the evidence thus: "Where the defendant denies guilt and where, as here, the evidence when all considered shows the untruthfulness of the testimony of the principal witness, this court must reverse the judgment and discharge the defendant, even though such witness did testify directly to the guilt of defendant." In support of his contention, defendant cites State v. Brown, 209 Mo. 413, 107 S. W. 1068.

The only direct evidence connecting defendant with the setting on fire of the flour-mill building was that of the witness Mitchell, who, after arrest, confessed the arson by setting fire to the building and, we assume, implicated defendant. Thereafter Mitchell was indicted and, at the time of his testimony against defendant, was serving a three-year sentence in the penitentiary.

Mitchell, according to his testimony, was hired by defendant for the purpose indicated. Although at common law, defendant, under these circumstances, was denominated an accessory before the fact or in the second degree, under our statute he became responsible as though a principal in the first degree and chargeable as such. [R. S. 1919, sec. 3687.] Mitchell and defendant, if Mitchell is to be believed, were accomplices. Mitchell, having pleaded guilty or been convicted and sentenced, even though an accomplice, became a competent witness. [State v. Roderman, 297 Mo. 143, 248 S. W. 964.] And we have held that one charged with a crime can be convicted on the uncorroborated testimony of an accomplice. [State v. Glon, 253 S. W. 364.]

Defendant bases his contention that we ought to discharge him on the following facts and inferences: That defendant was shown a man of good character and high standing. Mitchell was shown a man of bad character and unworthy of belief. That no enmity existed between defendant and John and George Merkel, the owners of the flour mill, or between defendant and witness Bremer, the owner of the store whose buildings were burned. That no motive on the part of defendant was shown. That Mitchell said he destroyed the letters written him by defendant. That defendant's garage was about a hundred feet distant from the flour mill, resulting that a fire would endanger it. Conceding that we are unable from the testimony to perceive motive on defendant's part, yet motive is not an essential element of a crime necessary to be shown by the State. [State v. Santino, 186 S. W. 976.] If defendant actually instigated

and participated in the commission of the crime, he is guilty, not-withstanding a want of motive. Moreover, we are not wholly persuaded that occasion exists to unequivocally declare that the evidence of Mitchell is so utterly unbelievable that we must cast it aside. A reading of Mitchell's testimony promotes the conclusion that his tale as to defendant's connection with the fires is anomalous and improbable, yet, in failing to ascribe a motive to defendant or to disclose a fact that was directly impeached, the witness' lack of ingenuity and the artlessness of his story stamp it not impossible of belief. We think the court *nisi* properly submitted the case to the jury on the facts developed by the State.

III. Defendant complains that the court erred in admitting evidence as to defendant's connection with the Ku Klux Klan. According to witness Bremer, defendant, about three days before the fire, purchased of Bremer eight pieces of steel strips. On cross-examination by defendant, the witness first stated that he and defendant were on friendly terms. The witness then stated that those terms and this relationship did not exactly continue to the time of the fire. He stated that there had been no falling out, but they were not as friendly as they had been before. He could not tell what the trouble was, for he had done him no harm, nor had defendant done witness any wrong. Three weeks after the fire, defendant voluntarily sought witness, paying him an account owing. At the time they were both friendly. On redirect examination by the State, witness was asked if they had been friendly at the time of the fire and witness answered, "No." He then gave as a reason that they had not been on good terms since that Klan business started in Bourbon. Witness stated that he was not a Klansman and was opposed to the Klan. Defendant objected because it was irrelevant and immaterial whether witness was a Klansman or opposed to the Klan. The witness was permitted to state that two factions existed at Bourbon, the Klan and anti-Klan factions; that he was an anti-Klansman and defendant a Klansman, and that was the cause of the apparent strained relationship between them. The court overruled several objections of defendant to the effect that such evidence was irrelevant and immaterial, called for a conclusion and the opinion of the witness and permitted the witness to state a conclusion without stating facts. On redirect examination, the witness stated that the only way he knew defendant was a Klansman was by his acts, and that he never conversed with defendant about these matters or about the faction either belonged to. Defendant then requested the court to strike out the testimony on the subjects on the ground that it was an opinion and conclusion of the witness and not based on any fact.

358

We think that the statement by the witness that defendant belonged to the Klan was a conclusion, and the supposition and opinion of the witness. So far as the evidence established, the witness had no fact upon which to base the statement. Even though he had known the fact to be true, the evidence in that regard raised a false issue without further proof that defendant, by reason of membership in the Klan, bore enmity to the injured, so as to show motive.

A wide latitude is generally allowed in the development of evidence to show motive. The evidence, however, adduced in that regard must be competent and relevant. Its admissibility is governed by its connection with other facts and circumstances. Here no facts or circumstances connecting defendant with the Klan appeared. The testimony of the witness as to defendant's connection with the Klan amounted to nothing more than his belief or opinion. The testimony involved the mental state of defendant toward the witness, which was not based upon an apparent fact, but rather on what the witness conceived and figuratively felt, instead of what he perceived or knew, resulting that his conclusion was substantially aided by his reasoning faculty. This was not evidence that was based on the result of one of the five senses so as to render it admissible. That it was prejudicial we entertain no doubt.

The judgment is reversed and the cause remanded.

PER CURIAM:—This cause coming into Court en Banc from Division Two, the foregoing divisional opinion by Davis, C., is adopted as the decision of the court. *White, C. J.*, and *Ragland, Atwood, Blair* and *Gantt, JJ.*, concur; *Walker, J.*, dissents; *Gentry, J.*, not sitting.