GONZALEZ, et al.

v.

PEOPLE OF THE VIRGIN ISLANDS

No. 7041

Circuit Court of Appeals

Third Circuit

January 11, 1940

*See, also, 109 F.2d 215*

BENICIO F. SANCHEZ CASTANO, San Juan, Puerto Rico, *submitted a brief for appellants.*

JAMES A. BOUGH, District Attorney of Charlotte Amalie, Virgin Islands, *for appellees*

Before MARIS, CLARK, and JONES, *Circuit Judges*

MARIS, *Circuit Judge*

The defendants, Isaias Gonzalez and Eloy Cruz, were convicted in the District Court of the Virgin Islands, Saint Croix Division, of arson in the second degree.[1] They have appealed to this court, a brief being submitted by counsel on their behalf. The district attorney appeared and argued the case and also submitted a brief on behalf of the People of the Virgin Islands.

The defendants are Puerto Ricans. Gonzalez had lived in the Virgin Islands for more than eight years. He was a merchant and kept a grocery and dry-goods store in a rented building at No. 57 Queen Street in the division of Frederiksted, in the Municipality of Saint Croix, Virgin

---

[1] Arson in the second degree is defined by sec. 5 and made punishable by sec. 6 of chap. 10 of Title IV of the Code of Laws for the Municipality of Saint Croix (14 V.I.C. § 253), provided by ordinance of the Colonial Council of the Municipality of Saint Croix passed May 17, 1920, and sanctioned and approved by the Governor of the Virgin Islands of the United States June 15, 1920 (published 1921).

Islands. Cruz, his son-in-law, had been in the Virgin Islands for three and one-half years. He was employed as an automobile mechanic at Bethlehem.

On October 24, 1938, Cruz did not go to his regular employment but went instead to his father-in-law's store to assist him in unpacking merchandise, including a case of oil lamps which arrived that afternoon. He admitted opening a kerosene can, although there was another opened tin in the store at the time. The odor of kerosene oil was noticed by a visitor to the store about five o'clock in the afternoon. About six Gonzalez closed the windows and all but one of the doors, that one being partly closed. Gonzalez and Cruz did not leave at that time, however, but remained inside unpacking merchandise, as they contend. During all this time and until after the fire was discovered the owner of the building was occupying her living quarters on the second floor directly above the store.

At about six-thirty an explosion was heard in the store and fire was discovered coming out of one of the windows and a door near the southeast corner of the building. Gonzalez and Cruz were still inside. Cruz then left to notify the police, he said, but meeting the fire engine he did nothing to assist and left the scene. Neighbors rushed in with buckets of water, the fire engine arrived quickly and the fire was extinguished before it spread to the entire building. Gonzalez was in the store when the fire fighters arrived. Both he and Cruz testified that the latter had discovered smoking waste material in a barrel, that the former had pulled the material from the barrel and that the smoking material then bursting into flames had started the fire.

Examination of the store by the police officers after the fire, however, disclosed that the fire had been the worst in an area between the south wall and a green painted show case which was between that wall and the barrel. The green

paint on the side of the show case next to the barrel was not even charred. Fourteen separate pieces of oil soaked material were found strategically placed in various parts of the cases along the south wall and fragments of a bottle were discovered among the dry goods in one of these cases. The greatest amount of burning took place in the southeast corner of the store, the municipal director of police testifying to "great charring, or burning in that corner."

It appeared that Gonzalez had his stock in trade insured for $5,000. At the trial he stated that its value was $4,500. He did not itemize or otherwise support this valuation, however, while the agent of the insurance company testified that an inventory and appraisal of the goods in the store made by its appraiser showed their value before the fire to be only $1,525.96.

The defendants' assignment of errors covers a wide range. In their brief submitted to us on this appeal, however, they urge but five errors. These we will proceed to consider.

The defendants first urge that the district court erred in overruling the motion of their attorney requesting the Court to appoint an interpreter to act throughout the trial. They are Spanish speaking natives of Puerto Rico and they argue that since they were unable to speak or understand the English language they were entitled to have the testimony of the People's witnesses interpreted to them. They point to sec. 34 of the Organic Act of the Virgin Islands (June 22, 1936, ch. 699, § 34, 49 Stat. 1815; prec. 1 V.I.C.), 48 U.S.C. § 1406g, which provides that "in all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him, . . . " and they say that this right neces-

sarily includes the right to have the testimony of such witnesses interpreted if given in a language with which the accused is not familiar.

It may well be that an accused who is unfamiliar with the language would be entitled under a constitutional provision like the one just quoted to have the testimony of the People's witnesses interpreted to him in order that he may fully exercise his right of cross-examination.[2] This we need not decide, however, since in the case before us it does not appear from the record that the defendants were unable to speak or understand English, the language of the People's witnesses. On the contrary it does appear that both of them had resided in an English speaking community for a considerable period, one of them — Gonzalez — having kept a store in that community for over eight years, and that shortly after the fire they each gave statements in English to the chief of police at Frederiksted. The ignorance of English they now profess thus seems highly improbable.

■ Furthermore the record does not indicate that the defendant's counsel moved for an interpreter at the commencement of the trial. On the contrary it does appear that later, when the defendants opened their case, the district court appointed an interpreter and that defendant Gonzalez' testimony was given through the interpreter so appointed. It has been held that an accused may waive his right to be confronted with the witnesses against him by failure to assert it in apt time.[3]

■ Where, as here, a defendant fails to state to the court that he cannot understand the language of the prosecution witnesses and fails to request an interpreter, his

[2]See 14 Am. Jur., Criminal Law, § 181; Zunago v. State, 63 Tex. Cr. R. 58, 138 S.W. 713, Ann. Cas. 1913D, 665.
[3]State v. Mitchell, 119 N.C. 784, 25 S.E. 783, 1020.

right must be deemed to be waived.[4] It follows that the defendants' first point is without merit.

■ Defendant Cruz also argues that the information should have been dismissed as against him at the close of the People's case and that a verdict of acquittal should have been directed in his favor at the end of the trial. These points involve the question whether the evidence was sufficient to take the case against Cruz to the jury. After reading all the evidence in the record we are satisfied that the People sustained the burden cast upon them and that the verdict of guilty rendered against Cruz is sufficiently supported.

The many kerosene soaked materials observed after the fire strongly indicated that it was of incendiary origin. This was also indicated by the explosion heard just before the fire started and by the broken bottle found later near the point of the fire's origin. The defendants had closed the store and were alone in it when the explosion took place. Their explanation of its origin in a barrel is contradicted by the physical facts observed by the police officers. Cruz, the son-in-law of Gonzales, the storekeeper, was not employed there. He had taken sick leave from his regular employment at Bethlehem to help his father-in-law on this particular day. The jury was justified in finding from the evidence that he was there to assist in preparing for the fire which actually occurred.

■ It is next urged that the burning, which is an essential element of the crime of arson, was not proved by the evidence adduced by the prosecution, and the judgment should accordingly be reversed.

Sections 1, 3 and 4, chapter 10, Title IV, of the Code of Laws for the Municipality of Saint Croix (1921; 14 V.I.C. § 251) are as follows:

---

[4]Zunago v. State, Supra; Luera v. State, 124 Tex. Cr. R. 507, 63 S.W.2d 699.

"Section 1. — Arson is the wilful and malicious burning of a building of another with intent to destroy it.

"Section 3. — To constitute a burning within the meaning of this chapter, it is not necessary that the building set on fire should have been destroyed. It is sufficient that fire is applied so as to take effect upon any part of the substance of the building.

"Section 4. — To constitute arson it is not necessary that a person other than the accused should have had ownership in the building set on fire. It is sufficient that at the time of the burning another person was rightfully in possession of or was actually occupying such building, or any part thereof."

It is argued by the defendants that there was no evidence of burning of "any part of the substance of the building." There is no merit in this contention. "To constitute the burning, it is only necessary that some portion of the dwelling, however small, be burned, that is, that the fiber or texture of the wood be wasted or destroyed, in common parlance, that it be charred as distinguished from merely smoked or discolored."[5]

■ We have already referred to the testimony of the municipal director of police as to the "great charring, or burning" which he observed after the fire in the southeast corner of the store. He also referred to it as "the terrific amount of burning in the corner." In this he was corroborated by another witness, while several witnesses testified to seeing flames coming out through the door and window nearest the southeast corner. We think that there was sufficient evidence of burning to support the jury's verdict.

■ Finally defendants urge that the judgment should be reversed since the motive which is an essential element of the crime of arson was not proved by the evidence adduced by the prosecution. The argument is based upon a false premise since motive is not an essential element of the crime of arson either under the provisions of the Saint

[5]Maltbie, J., in State v. Pisano, 107 Conn. 630, 141 Atl. 660.

410

Croix Code above quoted or at common law.[6] This, of course, is not to deny the significance of the presence or absence of motive, or its sufficiency, as bearing upon the issue of guilt or innocence. Motive was for the jury to consider, however. In this case the evidence of insurance of $5,000 upon goods afterwards appraised by the insurance company at little more than $1,500 was sufficient to support a finding that Gonzalez' motive was to enrich himself at the expense of the company. The jury might fairly have inferred that his daughter also would have benefited from this enrichment, thus establishing a motive for the part played by her husband, the defendant Cruz.

The judgment of the district court is affirmed.

---

[6] C.J.S., Arson, § 3a(4); Rex v. Elizabeth Salmon, Russ. & Ry. 26, 168 English Reprint 665; State v. Pisano, supra; Farmer v. Commonwealth, 219 Ky. 28, 292 S.W. 484; State v. Koch, 321 Mo. 352, 10 S.W.2d 928.