**UNITED STATES of America ex rel. Rogelio Nieves NEGRON, Petitioner-Appellee,**

v.

**The STATE OF NEW YORK, Respondent-Appellant.**

**No. 112, Docket 34885.**

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1970.

Decided Oct. 15, 1970.

Hillel Hoffman, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., State of N. Y., and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellant.

Robert Hermann, New York City (Milton Adler, The Legal Aid Society, New York City, on the brief), for petitioner-appellee.

Before LUMBARD, Chief Judge, CLARK, Associate Justice * and KAUFMAN, Circuit Judge.

IRVING R. KAUFMAN, Circuit Judge:

We affirmed in open court the granting of Negron's petition for a writ of habeas corpus by Judge Bartels. Because the issue decided by us will have important precedential value, we now set forth the reasons for our holding that the lack of adequate translation for Negron of those portions of his 1967 Suffolk County murder trial which were conducted in English rendered the trial constitutionally infirm.

Negron, a native of Arecibo, Puerto Rico, first emigrated to this country sometime between 1963 and 1965, at which time he worked for several months as a potato packer, before returning to his homeland. In 1966 Negron returned here to the same employment, living on a small farm with three co-workers in Riverhead, New York. He had been in this country for the second time only a few months when on the afternoon of August 10, 1966, a verbal brawl between Negron and one of his house-mates, Juan DelValle, both of whom had consumed a substantial amount of alcohol, resulted in the fatal stabbing of DelValle.

Within an hour of DelValle's death Negron had been arrested and charged with murder. Subsequently Negron was convicted after a jury trial of murder in

* United States Supreme Court, retired, sitting by designation.

the second degree and sentenced on March 10, 1967, to from twenty years to life imprisonment. After exhausting his opportunities for direct review,[1] Negron filed a pro se application for a writ of habeas corpus in the Eastern District of New York on June 25, 1969. Judge Bartels in a thorough opinion, Negron v. State of New York, 310 F.Supp. 1304 (E.D.N.Y.1970), granted Negron his release, subject however to the state's prerogative to appeal or retry Negron within thirty days. The state then took this appeal within the requisite time.

The government does not dispute that at the time of his trial, Negron, a 23-year-old indigent with a sixth-grade Puerto Rican education, neither spoke nor understood any English. His court-appointed lawyer, Lloyd H. Baker, spoke no Spanish. Counsel and client thus could not communicate without the aid of a translator.[2] Nor was Negron able to participate in any manner in the conduct of his defense, except for the spotty instances when the proceedings were conducted in Spanish, or Negron's Spanish words were translated into English, or the English of his lawyer, the trial judge, and the witnesses against him were gratuitously translated for Negron into Spanish.

The times during pre-trial preparation and at trial when translation made communication possible between Negron and his accusers, the witnesses, and the officers of the court were spasmodic and irregular. Thus, with the aid of an interpreter, his attorney conferred with Negron for some twenty minutes before trial at the Suffolk County jail. Negron's own testimony at trial, and that of two Spanish-speaking witnesses called by the state, was simultaneously translated into English for the benefit of the court, prosecution and jury by Mrs. Elizabeth Maggipinto, an interpreter employed in behalf of the prosecution. At the commencement of the trial, Mrs. Maggipinto translated for Negron the trial court's instructions with respect to Negron's right to make peremptory challenges to prospective jurors. And, during two brief recesses in the course of Negron's four-day trial, Mrs. Maggipinto met with Negron and Baker for some ten to twenty minutes and merely summarized the testimony of those witnesses who had already testified on denial and cross-examination in English.[3] It also appears from the record that when Mrs. Maggipinto was not translating Spanish to English for the court, she would return to her home and remain there "on call." When she was present in the courtroom, she never translated English testimony for Negron while the trial was in progress.[4]

To Negron, most of the trial must have been a babble of voices. Twelve of the state's fourteen witnesses testified against him in English. Apart from Mrs. Maggipinto's occasional *ex post facto* brief resumes—the detail and accuracy of which is not revealed in any record—none of this testimony was comprehensible to Negron. Particularly damaging to Negron's defense was the testimony of Joseph Gallardo, an investigator from the Suffolk County District Attorney's office. Gallardo testified both at the *Huntley* hearing and at trial —each time in English, although he also was able to speak Spanish—that on the morning after the death of DelValle, and after Gallardo had given him the *Miran-*

---

1. Petitioner's conviction was affirmed without opinion by the Appellate Division, Second Department on April 22, 1968, 29 A.D.2d 1050. Leave to appeal was denied by the New York Court of Appeals on July 12, 1968. Certiorari was denied by the United States Supreme Court on June 2, 1969. Negron v. New York, 395 U.S. 936, 89 S.Ct. 2000, 23 L.Ed.2d 452.

2. At the hearing before Judge Bartels, Baker testified that he "was not able to speak with" Negron "at all" without an interpreter.

3. Negron testified before Judge Bartels below that he could not recall these conferences, but both Baker and Mrs. Maggipinto attested to their occurrence.

4. Indeed, at one point Negron's own testimony was postponed because Mrs. Maggipinto had been sent home mistakenly.

da warnings, Negron admitted that he "killed [DelValle] because he called me a cabron [cuckold]." Negron denied at the hearing and at trial that he had made any such statement. Negron's version of the killing was that DelValle had indeed insulted Negron—but Del-Valle, not Negron, then produced a kitchen knife. In an ensuing scuffle, DelValle was accidentally killed.

## I.

We have recently had occasion to comment that there is surprisingly sparse discussion in the case law of the right to a translator or interpreter at criminal trials.[5] We agree, however, with Judge Bartels that in the circumstances of this case "regardless of the probabilities of his guilt, Negron's trial lacked the basic and fundamental fairness required by the due process clause of the Fourteenth Amendment." Indeed, the government does not dispute the nearly self-evident proposition that an indigent defendant who could speak and understand no English would have a right to have his trial proceedings translated so as to permit him to participate effectively in his own defense, provided he made an appropriate request for this aid.[6]

 It is axiomatic that the Sixth Amendment's guarantee of a right to be confronted with adverse witnesses, now also applicable to the states through the Fourteenth Amendment, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965), includes the right to cross-examine those witnesses as an "an essential and fundamental requirement for the kind of fair trial which is this

country's constitutional goal." Id. at 405, 85 S.Ct. at 1068. See also, Bruton v. United States, 391 U.S. 123, 128, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); Mattox v. United States, 156 U.S. 237 242–243, 15 S.Ct. 337, 39 L.Ed. 409 (1895). But the right that was denied Negron seems to us even more consequential than the right of confrontation. Considerations of fairness, the integrity of the fact-finding process, and the potency of our adversary system of justice forbid that the state should prosecute a defendant who is not present at his own trial, see, e. g., Lewis v. United States, 146 U. S. 370, 372, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), unless by his conduct he waives that right. See, e. g., Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed. 353 (1968). And it is equally imperative that every criminal defendant—if the right to be present is to have meaning —possess "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1962) (per curiam).[7] Otherwise, "[t]he adjudication loses its character as a reasoned interaction * * * and becomes an invective against an insensible object." Note, Incompetency to Stand Trial, 81 Harv.L.Rev. 454, 458 (1969).

██ However astute Mrs. Maggipinto's summaries may have been, they could not do service as a means by which Negron could understand the precise nature of the testimony against him

---

5. United States v. Desist, 384 F.2d 889, 901 (2d Cir. 1967), aff'd 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1968).

6. See Terry v. State, 21 Ala.App. 100, 105 So. 386 (1925); (defendant was a deaf-mute); Garcia v. State, 151 Tex.Cr.R. 593, 210 S.W.2d 574 (1948); State v. Vasquez, 101 Utah 444, 121 P.2d 903 (1942) (defendant spoke "broken English").

7. See also Wilson v. United States, 129 U.S.App.D.C. 107, 391 F.2d 460, 462 (1968), quoting with approval, United States v. Wilson, 263 F.Supp. 528, 533 (D.C.1966), (due process requires that defendant have a "present ability to follow the * * * proceedings * * * and discuss them rationally with his attorney").

# 390

during that period of the trial's progress when the state chose to bring it forth. Negron's incapacity to respond to specific testimony would inevitably hamper the capacity of his counsel to conduct effective cross-examination. Not only for the sake of effective cross-examination, however, but as a matter of simple humaneness, Negron deserved more than to sit in total incomprehension as the trial proceeded. Particularly inappropriate in this nation where many languages are spoken is a callousness to the crippling language handicap of a newcomer to its shores, whose life and freedom the state by its criminal processes chooses to put in jeopardy.

## II.

■ Nor are we inclined to require that an indigent, poorly educated Puerto Rican thrown into a criminal trial as his initiation to our trial system, come to that trial with a comprehension that the nature of our adversarial processes is such that he is in peril of forfeiting even the rudiments of a fair proceeding unless he insists upon them. Simply to recall the classic definition of a waiver —"an intentional relinquishment or abandonment of a known right," Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)—is a sufficient answer to the government's suggestion that Negron waived any fundamental right by his passive acquiescence in the grinding of the judicial machinery and his failure to affirmatively assert the right. For all that appears, Negron, who was clearly unaccustomed to asserting "personal rights" against the authority of the judicial arm of the state, may well not have had the slightest notion that he had any "rights" or any "privilege" to assert them. At the hearing before Judge Bartels, Negron testified: "I knew that I would have liked to know what was happening but I

did not know that they were supposed to tell me." Of obvious relevance here is the Supreme Court's logic in Pate v. Robinson, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815 (1966) that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently waive his right to have the court determine his capacity to stand trial."

Moreover, we need not decide on this record whether Negron's lawyer by his silence could effectively have waived Negron's right to appropriate access to the proceedings by means of adequate translation. There is no indication that Baker's failure to ask for an interpreter to assist Negron was any part of his trial strategy. Cf. Wilson v. Bailey, 375 F.2d 663 (4th Cir.1967). Nor could the motive for such an otherwise self-defeating strategy have been to deviously set up the case for reversal on appeal. As the history of Negron's own case attests, the federal right to a state provided translator is far from settled. Thus, Negron's counsel would have been on tenuous grounds for believing that the present claim would prevail. We would, in any event, be reluctant to find a knowing, intelligent waiver of so ill-defined a right.[8]

■ Moreover, Judge Bartels found it "obvious that the court and the District Attorney were fully aware of Negron's disabilities." The Supreme Court held in *Pate* that when it appears that a defendant *may* not be competent to participate intelligently in his own defense because of a possible mental disability, the trial court must conduct a hearing on the defendant's mental capacity. Negron's language disability was obvious, not just a possibility, and it was as debilitating to his ability to participate in the trial as a mental disease or defect. But it was more readily "curable" than any mental disorder. The least we can

---

8. See United States v. Liguori, 430 F.2d 842 (2d Cir., filed July 17, 1970) (defendant "cannot be faulted for failing to anticipate the action of the Supreme Court" subsequently taken in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969)).

require is that a court, put on notice of a defendant's severe language difficulty, make unmistakably clear to him that he has a right to have a competent translator assist him, at state expense if need be, throughout his trial.[9]

---

9. The cases primarily relied on by the government are readily distinguishable. In *Desist*, defendant was clearly not indigent and he had retained the services of a law firm one of whose partners spoke French, as did the defendant, and English. In that case "the record clearly show[ed] that the judge believed the defense was not hindered by a communications barrier." 384 F.2d at 902 n. 31. In Cervantes v. Cox, 350 F.2d 855 (10th Cir. 1965), similarly, the court endorsed the trial judge's finding that appellant was "completely aware of all the proceedings." *Id.* at 855–856. In Gonzalez v. People of the Virgin Islands, 109 F.2d 215, 217 (3rd Cir. 1940), it simply did not seem to the court "that defendants were unable to speak or understand English."

In view of the importance of Gallardo's testimony and the large number of other witnesses who testified in English against Negron, the denial of so important a right to Negron cannot be regarded as "harmless."