KROPIWKA, Appellant, V. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Respondent.

Supreme Court

*No. 76-298. Submitted on briefs January 9, 1979.—Decided February 27, 1979.*
(Also reported in 275 N.W.2d 881.)

For the appellant the cause was submitted on the brief of *Schuster & Carroll* of Madison.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *David C. Rice,* assistant attorney general.

DAY, J. This is an appeal from a judgment of the Dane County Circuit Court, the Hon. P. CHARLES JONES, presiding, entered on December 3, 1976, which affirmed an order of the respondent, Department of Industry, Labor and Human Relations (DILHR) dismissing a handicap discrimination complaint of appellant, Ivan Kropiwka.

The question on appeal is:

Was appellant Ivan Kropiwka, denied a full and fair hearing on his handicap discrimination charge because he was not provided an interpreter at his hearing?

Ivan Kropiwka was employed by Olin Corporation at its Badger Army Ammunition Plant on July 7, 1966. He was briefly a pipefitter and a sprinklerman and, at the time of his layoff, a laborer. Mr. Kropiwka's duties as a laborer included unloading bags and barrels of chemicals weighing up to one hundred pounds,[1] shoveling excavations, assisting crafts workers, operating jack-hammers and doing occasional railroad track repairs.

On December 12, 1973, Mr. Kropiwka injured his back when he lifted a hundred pound bag of chemicals. His supervisor, Roy Luke, sent him to the plant physician,

---

[1] Mr. Kropiwka testified that he had to lift bags weighing one hundred pounds only once or twice a month. His supervisor, Roy Luke, testified that unloading railroad cars containing these one hundred pound bags was a daily occurrence. DILHR found that "the lifting of these one hundred pound bags of chemicals is an essential part of the duties which [Mr. Kropiwka] performs as a laborer."

Dr. Richard O'Connell. Upon examination, Dr. O'Connell found two abnormalities in Mr. Kropiwka's back, loss of normal curvature of the back and inability to arise from a supine position, which were "objective evidence of a back injury." The doctor also reviewed Mr. Kropiwka's medical history which showed five previous visits to the plant hospital for back injuries. Dr. O'Connell recommended that Mr. Kropiwka be placed on light duty and Mr. Kropiwka returned to work.

Light duty consisted of repairing shovel and broom handles, and general cleanup such as picking up paper in the parking area. Supervisor Luke testified that after his injury, Mr. Kropiwka was used only in a light duty capacity. Mr. Kropiwka testified, on the other hand, that after his injury he performed "any kind of job" and not just light duty work.

Immediately after sending Mr. Kropiwka to Dr. O'Connell, Supervisor Luke contacted Ronald Nichols, the labor employee relations manager. Luke informed Nichols that he had only three laborers and one handyman, that the handyman was on light duty already, and that, if Mr. Kropiwka was also restricted to light duty, he had too few men left to do the physical work required. Luke asked Nichols to get a determination of whether Mr. Kropiwka and the handyman were capable of resuming all their regular laborer duties.

Nichols notified Dr. O'Connell that Roy Luke had a serious manpower problem necessitating that Mr. Kropiwka either return to his regular duties or be replaced. Dr. O'Connell recommended that Mr. Kropiwka be given a medical layoff because, in his opinion, Mr. Kropiwka was incapable of performing the duties of a laborer without undue strain on his back and high probability of further injury.

The applicable labor agreement in force at that time provided that when the medical department recommend-

ed medical layoff, and there were no other jobs available which the affected employee could perform, the layoff was effective on the date of the recommendation. The evidence showed there were no other positions to which Mr. Kropiwka could have been transferred, and so he was placed on medical layoff pursuant to the labor agreement. However, this layoff did not become effective until January 4, 1974, so that Mr. Kropiwka could receive holiday pay. He was never recalled to work and his medical layoff became a termination one year later by operation of the labor agreement.[2]

Mr. Kropiwka filed a discrimination complaint, dated January 22, 1974, with DILHR. He alleged that he was terminated on the basis of his handicap (his back condition), in violation of secs. 111.31–111.37, Stats. 1973, the Wisconsin Fair Employment Act. DILHR conducted an investigation which resulted in an initial determination of probable cause, and hearing on the matter was set for March 19, 1975. Keith B. Clifford, an attorney at law filed a notice of appearance in this case, but Mr. Kropiwka dismissed Mr. Clifford and chose to speak for himself at this hearing.

On March 27, 1975, the hearing was held before examiner John Doll. At this hearing, Mr. Kropiwka testified on his own behalf and exhibited a lack of fluency in English. On June 26, 1975, the hearing examiner issued his recommended decision. Doll found that Mr. Kropiwka was unable to perform the required duties because of his back condition and that Olin did not discharge him in a discriminatory manner in violation of sec. 111.31–

[2] Mr. Kropiwka's layoff notice stated that the reason for his layoff was a reduction in the work force. Nichols testified, however, that the notice made no reference to a medical layoff because a standard form was used for all layoffs and such form did not specify medical reasons as the basis for layoffs. Nichols testified the reason for Mr. Kropiwka's layoff and termination was his back condition.

111.37, Stats.[3] 1973. Examiner Doll recommended that the handicap discrimination complaint filed with DILHR be dismissed.

Mr. Kropiwka filed timely written exceptions to the examiner's recommendation and oral argument was held before the Industry, Labor and Human Relations Commission on October 24, 1975. On October 30, 1975, the Commission adopted the examiner's recommended decision in its entirety and dismissed Mr. Kropiwka's complaint.

On November 20, 1975, Mr. Kropiwka, through Mr. John Walsh, attorney at law, petitioned the circuit court for Dane County to review the DILHR order pursuant to Ch. 227, Wis. Stats. 1975. Mr. Walsh moved the court for permission to present additional evidence and submitted an offer of proof. The court denied the motion on April 23, 1976. Circuit Judge Richard W. Bardwell ruled that Mr. Kropiwka failed to adequately show that there was additional material evidence not presented at the hearing, which would probably change the result. Judge Bardwell further ruled that Mr. Kropiwka failed to show good reasons for not presenting this additional evidence at the hearing. Mr. Kropiwka subsequently discharged Mr. Walsh.

The Circuit Court review proceedings were before Acting Judge P. Charles Jones. In his memorandum decision, Judge Jones stated that he found "nothing in the record that would indicate any improper procedures with respect to the hearing held on this matter" and that Mr. Kropiwka was "physically unable to perform all of the tasks required." Regarding Mr. Kropiwka's lack of

---

[3] "111.32. Definitions. . . .(5)(f) The prohibition against discrimination because of handicap does not apply to failure of an employer to employ or to retain as an employe any person who because of a handicap is physically or otherwise unable to efficiently perform, at the standards set by the employer, the duties required in that job."

fluency in English, Judge Jones quoted Judge Bardwell's observation in the ruling on the motion to present additional evidence: "A cursory reading of the record reveals that in light of petitioner's lack of fluency in the English language, the hearing examiner adequately protected petitioner's rights and helped him develop his case." Accordingly, the court affirmed DILHR's order in its judgment dated December 3, 1976. This appeal followed.

The question before this court is Mr. Kropiwka's contention that his lack of fluency in the English language prevented him from being afforded a full and fair hearing of his employment discrimination claim against his employer and, therefore he was denied due process of law.

Proceedings under sec. 111.31–111.37, Stats. 1973, the Wisconsin Fair Employment Act, are subject to the full and fair hearing due process provisions of Ch. 227, Stats. Mr. Kropiwka was entitled to a full and fair hearing under sec. 227.07, Stats. 1973 which provides (in pertinent part) :

". . . Prior to the final disposition of any contested case, all parties shall be afforded opportunity for full, fair, public hearing after reasonable notice. . ."

This court has said that in such cases due process fairplay rules apply, which require notice of hearing and description of the issue, the right to present witnesses and cross-examine. "Further, that findings of fact and conclusions of law must be made. And equally important, the standard of review is 'substantial evidence in view of the record as a whole.' " *Daly v. Natural Resources Board,* 60 Wis.2d 208, 216, 208 N.W.2d 839 (1973). However, the court noted that "While due process must be extended . . . this does not mean that all of the procedural niceties of a judicial trial must be observed." *Id.* at 218.

It is well-settled that the use of an interpreter is discretionary with the trial court. See *Perovich v. United States*, 205 U.S. 86, 91, 27 S. Ct. 456, 51 L. Ed. 722 (1907) ; *United States v. Barrios*, 457 F.2d 680 (9th Cir. 1972) ; *United States v. Sosa*, 379 F.2d 525, 527 (7th Cir. 1967), cert. denied, 389 U.S. 845, 88 S. Ct. 94, 19 L. Ed.2d 111 (1967) ; *People v. Atsilis*, 60 Mich. App. 738, 231 N.W.2d 534 (1975) ; *People v. Soldat*, 32 Ill.2d 478, 207 N.E.2d 449 (1965).

The question of the *right* to a court-appointed interpreter has arisen in criminal cases. The use of an interpreter has been elevated to a right when the defendant is an indigent and obviously does not comprehend English. *United States ex rel. Negron v. New York*, 434 F.2d 386 (2nd Cir. 1970). In that case, the defendant, Negron, was an indigent who had lived in the United States for a few months and neither spoke nor understood any English. The court noted that to Negron, "most of the trial must have been a babble of voices." *Id.* at 388. The court held that "in the circumstances of this case . . . Negron's trial lacked the basic and fundamental fairness required by the due process clause . . ." *Id.* at 389. The court went on to state that ". . . as a matter of simple humaneness, Negron deserved more than to sit in total incomprehension as the trial proceeded." *Id.* at 390.

In *United States v. Carrion*, 488 F.2d 12 (1st Cir. 1973), cert. denied, 416 U.S. 907, 94 S. Ct. 1613, 40 L. Ed.2d 112 (1970), the defendant, who had been convicted of aiding and abetting the distribution of heroin, argued that his Fifth and Sixth Amendment rights had been abridged during trial because the court had refused to appoint an interpreter for him. The defendant was a foreign-born national with a limited ability to speak and comprehend English; his counsel suggested the pos-

sibility of a problem of communication at the beginning of the trial and on appeal, the defendant pointed to instances during his testimony where questions had to be repeated or where his responses were so unclear as to require that he rephrase them. *Id.* at 14. In its analysis, the court considered the question:

". . . how high must the language barrier rise before a defendant has a right to an interpreter? It is well settled that there is no right to an interpreter if the foreign-born defendant speaks fluent English and is 'completely aware of all the proceedings.' *Cervantes v. Cox,* 350 F.2d 855 (10th Cir. 1965). The status of the right becomes less certain, however, where, as in the present case, the defendant has some ability to understand and communicate, but clearly has difficulty." *Id.*

The court concluded that

". . . because the determination is likely to hinge upon various factors, including the complexity of the issues and testimony presented during trial and the language ability of the defendant's counsel, considerations of judicial economy would dictate that the trial court, coming into direct contact with the defendant, be granted wide discretion in determining whether an interpreter is necessary." *Id.*

In *Carrion,* the court found that the trial court had been sensitive to the defendant's difficulty with English, had inquired whether the defendant was able to communicate and understand English, and had instructed the defendant to indicate if something was unclear so that the testimony could be repeated. This protected defendant's rights. The *Carrion* case summarizes the prevailing view on this issue.

Two recent 7th Circuit cases dealt with this issue. In *United States v. Sosa,* 379 F.2d 525 (7th Cir. 1967) (rehearing denied, 1967), the defendant, a Mexican who spoke English with an accent, was convicted of con-

spiracy to deal in narcotics. On appeal, the defendant contended that the trial court had abused its discretion and committed prejudicial error in refusing to permit him to present his testimony with the use of an interpreter. The appellate court found that Sosa's testimony was given in English and that his language difficulties did not hamper his understanding on his testifying, and that there had been no abuse of discretion by the trial court in denying the use of an interpreter. *Id.* at 527.

In *United States v. DeLeon*, 498 F.2d 1327 (7th Cir. 1974) (rehearing denied en banc July 18, 1974 and July 31, 1974), the defendants were convicted of possessing cocaine with intent to distribute and distributing cocaine. One of the defendants argued on appeal that he had been denied due process by the absence of an interpreter during the first portion of his cross-examination. The court pointed out that the defendant had given his direct testimony and most of the cross-examination without an interpreter, and that an interpreter had been provided immediately when requested by counsel. Further, the court noted, the defendant had conducted all of the negotiations for the sale of drugs to the government agent in English. The court held that "in these circumstances, the argument is purely frivolous." *Id.* at 1333.

There are very few civil cases dealing with this issue. The most recent is *Jara v. Municipal Court for San Antonio, etc.,* 145 Cal. Rptr. 847, 578 P.2d 94 (1978), which involved a petition for a writ of mandamus to compel the municipal court to provide an interpreter for an indigent defendant in a civil suit. Alleging indigency and inability to speak or understand English, the defendant in a property damage action arising from an automobile accident moved the municipal court to appoint an interpreter without expense to himself. When his motion was denied, the defendant petitioned the ap-

pellate level court for a writ of mandamus to compel the municipal court to provide him such an interpreter. The appellate court denied this petition and the California Supreme Court affirmed this denial.

The majority concluded that non-English speaking litigants ordinarily had alternative sources of assistance in communicating with their counsel (e.g. family, friends, social workers) and that since court proceedings were controlled by counsel, courts were not constitutionally required to appoint interpreters at public expense to assist these indigent but represented litigants.

To determine whether an interpreter should have been used, the court should look to the entire record. In *People v. Soldat,* 32 Ill.2d 478, 207 N.E.2d 449 (1965) the defendant was convicted of robbery in a trial where the witnesses were not fluent in English and their testimony was broken and ungrammatical. The defendant argued that he was deprived of his constitutional right to a fair trial because the trial court failed to provide an interpreter to aid him in cross-examination. To determine the witnesses' level of understanding of English, the Illinois Supreme Court looked to ". . . the original record, and upon a review of the entire record" found witnesses' testimony was broken and ungrammatical, it was nonetheless understandable . . . although it may have required some concentration and patience to grasp, the substance was clear and the trial judge did not abuse his discretion in not providing an interpreter." *Soldat, supra* at 480. See also: *Qualls v. Anchorage,* 378 P.2d 405 (1963) ; *People v. Shok,* 12 Ill.2d 93, 145 N.E.2d 86 (1957) ; *People v. Atsilis,* 60 Mich. App. 738, 231 N.W.2d 534 (1975).

The facts of the case before this court are consistent with those cases discussed above in which a party "has some ability to understand and communicate, but clearly

has difficulty." *Carrion, supra,* 488 F.2d 12 at 14. See also *Sosa, supra,* 379 F.2d at 525; *DeLeon, supra,* 498 F.2d at 1327; *Soldat, supra,* 32 Ill.2d at 478.

In such cases, the trial court is to be granted wide discretion in determining whether an interpreter is necessary. In the present case, not a criminal case, the use of an interpreter was discretionary with the hearing examiner. To determine whether the examiner abused this discretion by failing to use an interpreter, we must consider the entire record.

Mr. Kropiwka was described by one of his attorneys as "an educated and multilingual individual" although not fluent in English. A careful reading of the hearing transcript reveals that Mr. Kropiwka speaks in broken, ungrammatical English and that he is somewhat unresponsive, answering questions and adding explanations and contentions as he goes along. The hearing examiner allowed him latitude in this and so Mr. Kropiwka's testimony is rambling, but understandable.

In his brief, Mr. Kropiwka asserts that the hearing transcript is replete with instances where he exhibits a lack of understanding of the procedures involved and instances where there is a breakdown in communication between himself and the hearing examiner. Mr. Kropiwka refers specifically to difficulties with cross-examination and objecting to exhibits as they were presented. Mr. Kropiwka includes brief excerpts of the testimony to illustrate his difficulties.

For example, the appellant's brief points to this excerpt from the hearing transcript as illustrative of Mr. Kropiwka's nonresponsiveness to the question of whether he was ever asked to come back to work:

"Ya. I deliver it. I stop and examined by doctor, and I delivered it to Mr. Nichols, slip for doctor, and we talking about turn it back. Mr. Nichols promise me talk

to plant doctor and connected with me after speak with plant doctor, connected with me and never not do that."

But what he fails to include in the brief is the exchange which immediately followed the quoted section:

"*Q.* Well, when did they offer you a job to go back to work.

"*Mrs. Kropiwka:* They did not offer. They just say.

"*Hearing Examiner Doll:* Mrs. Kropiwka, you can't answer. You don't know what occurred.

"*Mrs. Kropiwka:* I know.

"*Mr. Kropiwka:* We not talking about the time with Mr. Nichols when I turned it back. We talking about if doctor, plant doctor, prove it, you know.

"*Q.* All right. The initial determination said that you were offered a job March 7, 1974, but that you refused it.

"*A.* That is mistake, you know, that is mistake. It is not offer me job. He just say, Mr. Nichols say when he connected plant doctor we might be taking you back.

"*Q.* Well, it also said that you refused a job.

"*A.* No, no.

"*Q.* You didn't refuse a job?

"*A.* No. That is mistake."

Viewed out of the context of the *series* of questions and answers contained in the course of the hearings, the excerpted quotations seem unclear. But when read through as a whole, the hearing transcript indicates that Mr. Kropiwka understood and communicated sufficiently well in English so that, with the help of the hearing examiner, he had full opportunity to present his evidence, to cross-examine all of the witnesses who testified, and to respond to questions.

Mr. Kropiwka complains of his difficulties in understanding the procedures involved and in effectively presenting his case. It must be noted that these difficulties are encountered by any lay litigant who chooses to represent himself notwithstanding fluency in English. This

is the reason the hearing examiner assisted Mr. Kropiwka. In *State ex rel. Ball v. McPhee*, 6 Wis.2d 190, 210, 94 N.W.2d 711 (1959) this court observed that, in state administrative agency hearings, the hearing examiner often must protect the rights of a party not represented by counsel, and see to it that the party's case is properly developed. The examiner must be impartial, however, and may not engage in partisan activity on behalf of an unrepresented party. *Pruno v. Industrial Commission*, 187 Wis. 358, 203 N.W. 330, 204 N.W. 576 (1925).

Within these guidelines, the hearing examiner provided Mr. Kropiwka a full opportunity to develop his case and cross-examine witnesses. The hearing examiner elicited Mr. Kropiwka's direct testimony, including testimony which conflicted with that of his employer; the hearing examiner explained exhibits and the grounds for objecting to these exhibits; the hearing examiner assisted Mr. Kropiwka in his cross-examination of the witnesses. Although representation by counsel would have been beneficial, Mr. Kropiwka demonstrated an understanding of what the witnesses testified to by the questions he asked and contradictory information he brought out during cross-examination. As Judge Bardwell pointed out in the ruling on the motion to present additional evidence, "when petitioner decided to relieve his original attorney prior to the hearing and proceed without counsel, it was at his own risk."

Mr. Kropiwka suggests that the hearing examiner was oblivious to or unsympathetic regarding his lack of fluency in English. On the contrary, the lower court found that "a cursory reading of the record reveals that *in light of* [Mr. Kropiwka's] lack of fluency in the English language, the hearing examiner adequately protected [his] rights and helped him develop his case." (emphasis added).

In his brief, Mr. Kropiwka states that the "most salient examples" of misunderstanding occur with regard to "the central issue of the hearing—why [Mr. Kropiwka] was laid off." However, this was not an issue at hearing. Olin Corporation, Mr. Kropiwka's employer, admitted that Mr. Kropiwka was laid off because of his medical condition. The issue before DILHR was whether Mr. Kropiwka could perform his tasks notwithstanding his condition. Mr. Kropiwka asks that the order of DILHR be vacated and that an investigation be conducted into the question of his fluency in English to determine if an interpreter should be appointed or whether his wife may be sworn as an interpreter for a rehearing.

In this case, for reasons previously discussed, the use of an interpreter was discretionary with the hearing examiner, and this court finds no indication that he abused this discretion. Mr. Kropiwka was afforded a full and fair hearing without an interpreter and we find no improper procedures with respect to the hearing held on the matter.

Finally, while Mr. Kropiwka appeals the order of Judge Jones affirming the order of DILHR, he alludes to the determination by Judge Bardwell denying his petition to present additional evidence. The appellant's brief offers no additional material evidence, not introduced at the hearing before the department, which would require a further hearing.

*By the Court.*—Judgment affirmed.