STATE of Wisconsin, Plaintiff-Respondent,

v.

Abel NEAVE, Defendant-Appellant.

Supreme Court

*No. 82–1543. Argued December 1, 1983.—
Decided February 29, 1984.*

(Also reported in 344 N.W.2d 181.)

360

For the defendant-appellant there were briefs and oral argument by *Ruth S. Downs,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with

whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J. This is an appeal from an order of the circuit court for Kenosha county, Hon. William W. Zievers, Circuit Judge, denying the defendant's post conviction motion for a new trial or release from custody and discharge. The case is before this court on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats.

There are three issues on this appeal:

(1)    Does a defendant have a right to an interpreter if such defendant does not understand English sufficiently to confer with his attorney or reasonably understand testimony given in English at his preliminary hearing or trial?

We conclude that as a matter of fairness and sound judicial administration the answer is "yes."

(2)    Is the right to an interpreter waivable by the defendant's attorney or is it only waivable by the defendant personally?

We hold that such right may be waived only by the defendant. It should be done in open court and on the record.

(3)    Should the rule announced in this case be retrospective or prospective in its application?

We conclude that for reasons of judicial administration the rule shall be prospective only. But as to the defendant it shall apply and to any other cases where the issue is presently on appeal or incorporated in a pending motion for a new trial.

In the case of this defendant since the record seems clear that defendant could not understand English sufficiently to reasonably understand testimony given in English at his trial we reverse the trial court and remand for a new trial. The defendant, Abel Neave, was tried and convicted of attempted first-degree murder in viola-

tion of secs. 940.01 and 939.32, 1979–80[1] and sentenced to ten years in prison. Subsequent to his conviction, the defendant filed a motion for post conviction relief under sec. 974.06, alleging a violation of a constitutional right to an interpreter.[2] In its decision denying the defendant's motion, the trial court agreed that there is a constitutional right to an interpreter but held that there was no violation of that right in this case. The court rested its holding on three grounds: (1) the defendant was not indigent; (2) the decision not to have an interpreter was a

---

[1] Section 940.01, Stats. 1979–80 provides:

"**940.01 First-degree murder.** (1) Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

(2) In this chapter 'intent to kill' means the mental purpose to take the life of another human being."

Section 939.32, Stats. 1979–80 provides:

"**939.32 Attempt.** (1) Whoever attempts to commit a felony or a battery as defined by s. 940.19 or theft as defined by s. 943.20 may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime; except that for an attempt to commit a crime for which the penalty is life imprisonment, the actor is guilty of a Class B felony. Whoever attempts to commit a battery as defined in s. 940.20(2) is guilty of a Class A misdemeanor.

"(2) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does act toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

[2] There are three principal reasons why a non-English speaking criminal defendant needs an interpreter: (1) To translate during the defendant's testimony if he takes the stand; (2) to facilitate communication between the defendant and his English speaking attorney; and (3) to enable the defendant to reasonably understand the trial proceedings conducted in English. The only issue raised in this case is the defendant's ability to understand the proceedings at trial.

tactical decision made by the defendant's counsel; and (3) the defendant's failure to request an interpreter amounted to a waiver.

It is evident from the record that the defendant did have an interpreter at his preliminary hearing and arraignment; there was no interpreter at the trial or sentencing. In a letter to the defendant's appellate counsel, the defendant's retained trial counsel, Mr. Joe Kremkowski, stated that he "felt that an interpreter [at trial] would have prevented [him] from taking accurate notes of the testimony which was being had." At the hearing on the post conviction motion, counsel stipulated that Mr. Kremkowski would testify consistently with the statement made in the letter.

It is also evident from the record that the trial judge, who did not preside over the preliminary hearing, was aware of the defendant's language disability. At one point during the trial, a portion of the transcript from the preliminary hearing was read to the jury. The excerpt included a statement by the district attorney that it was his understanding "that the defendant speaks Spanish quite exclusively and speaks very little, if any, English." In its written decision on the sec. 974.06, Stats. motion, the court stated: "It is apparent from the record that the defendant speaks and understands little English."

The United States Supreme Court has never addressed the question of whether a criminal defendant who does not understand English has a constitutional right to the services of an interpreter. In *Perovich v. United States,* 205 U.S. 86 (1907), the defendant challenged his murder conviction on the grounds that the trial court had failed to appoint an interpreter when he was testifying. The court refused to upset the conviction on those grounds, stating: "This is a matter largely resting in the discre-

tion of the trial court, and it does not appear from the answers made by the witness that there was any abuse of such discretion." 205 U.S. at 91. A number of more recent cases have held that the appointment of an interpreter is discretionary with the trial court. *See, Suarez v. United States,* 309 F.2d 709 (5th Cir. 1962) ; *United States v. Sosa,* 379 F.2d 525, *cert. denied,* 389 U.S. 845 (1967), *United States v. Barrios,* 457 F.2d 680 (9th Cir. 1972). Clearly the discretion referred to in *Perovich* is to determine the factual question of whether an interpreter is needed; a trial court does not have discretion to decide whether a defendant who needs an interpreter has a legal entitlement to one. *United States v. Carrion,* 488 F.2d 12 (1st Cir. 1973), cert. denied, 416 U.S. 907 (1974).

A number of state and lower federal courts have addressed the question of whether there is a federal constitutional right to an interpreter in criminal cases. Those cases have generally held that the sixth amendment right to confront one's accusers, which includes the right to cross examine witnesses (*Pointer v. Texas,* 380 U.S. 400, 405 (1965)) as well as the right to be present in the courtroom at every stage of the trial (*Illinois v. Allen,* 397 U.S. 337, 338 (1970)), and the fundamental fairness required by the due process clause of the fourteenth amendment include the right of a criminal defendant who does not understand English to have the proceedings of his trial translated into a language he understands. *United States ex rel. Negron v. State of New York,* 434 F.2d 386 (2nd Cir. 1970) ; *United States v. Carrion,* 488 F.2d 12 (1st Cir. 1973), *cert. denied,* 416 U.S. 907 (1974) ; *Commonwealth v. Garcia,* 379 Mass. 422, 399 N.E.2d 460 (1980) ; *Baltierra v. State,* 586 S.W.2d 553 (Tex. Crim. App. 1979).

This court reviewed the cases discussing a criminal defendant's right to an interpreter in *Kropiwka v. DILHR,* 87 Wis. 2d 709, 275 N.W.2d 881, *cert. denied,* 444 U.S.

852 (1979). That case was an appeal from an order of the Department of Industry, Labor and Human Relations dismissing a handicap discrimination complaint. The question was not whether there was a legal entitlement to an interpreter but whether an interpreter was needed. The court stated that the determination of whether an interpreter is necessary is discretionary with the trial court and that the record gave no indication of an abuse of discretion. In the course of its opinion, the court stated: "The question of the *right* to a court-appointed interpreter has arisen in criminal cases. The use of an interpreter has been elevated to a right when the defendant is an indigent and obviously does not comprehend English. *United States ex rel. Negron v. New York,* 434 F.2d 386 (2nd Cir. 1970)." 87 Wis. 2d at 715.

We do not hold that there is federal constitutional right to an interpreter. We do hold that as a matter of judicial administration, and to avoid questions of effective assistance of counsel and questions of whether inability to reasonably understand testimony resulted in a loss of an effective right to cross-examination, or whether the right had been waived by a defendant or his attorney with the defendant's assent and how such assent was demonstrated, we adopt the rule herein announced. We also conclude that it removes the feeling of having been dealt with unfairly which is bound to arise when part or all of a trial is incomprehensible because of a language barrier.

The languages that were part of immigrant communities in this country from continental Europe have largely disappeared as succeeding generations used English as their primary or in most cases their only language. But today new groups from the southern portions of our own hemisphere and from portions of Asia seek

to make their home among us and still speak and understand only languages other than English. Fairness requires that such persons who may be defendants in our criminal courts have the assistance of interpreters where needed. If the defendant is personally unable to pay for the services of an interpreter, one will be provided at public expense.[3]

The second question is whether the right to an interpreter may be waived by the defendant's attorney or

[3] The right of a person with a hearing handicap to an interpreter is guaranteed in Wisconsin by statute. This is analogous to a person's inability to understand language used at his trial. Section 885.37, Stats. provides:

"885.37 **Interpreters for hearing-handicapped persons.** Upon a trial or examination in any matter wherein any deaf or hard of hearing person or any person unable to speak or who has a speech defect is accused of a crime or misdemeanor, or upon consideration by any state, county or municipal agency of the right or propriety of any such person to have privileges accorded normal hearing people, or when such person is to come under judgment as to fitness for a place in society, and there is a definite communications barrier as evidenced by such person being incapable of adequately understanding any charge, issue or pertinent utterances or expressing himself or herself because of a lack of ability to use the English language by reason of being deaf or hard of hearing, or by such person being unable to speak or who has a speech defect or other physical defect which handicaps such person in exercising or maintaining rights in such matter, the court, judge, agency, person or body conducting, considering or having jurisdiction of such trial, examination or matter shall call in and appoint an interpreter competent to converse in the special language, oral, manual or sign, familiar to or used by such deaf or hard of hearing person or such person unable to speak or who has a speech defect. The necessary expense of furnishing such interpreter shall be paid by the unit of government for which such trial, examination, inquiry or consideration is held or made if satisfactory proof is offered that the deaf or hard of hearing person, person unable to speak or who has a speech defect or other such person is unable to pay."

is to be treated as a personal right which may only be waived by the defendant.[4]

A number of early cases have held that the right to an interpreter is waived if it is not asserted by the defendant. In *Gonzalez v. People of Virgin Islands*, 109 F.2d 215 (3rd Cir. 1940), the Third Circuit Court of Appeals stated: "Where, as here, the defendant fails to state to the court that he cannot understand the language of the prosecution witnesses and fails to request an interpreter, his right must be deemed to be waived." 109 F.2d at 217 (footnote omitted). Similarly, in *People v. Ramos*, 26 N.Y.2d 272, 258 N.E.2d 197, 309 N.Y.S.2d 906 (1970), the Court of Appeals of New York held that where the defendant is represented by counsel and fails to request an interpreter, it cannot later be claimed defendant was denied due process of law. "Otherwise, it would be possible for a defendant to remain silent throughout the trial, and take a chance of a favorable verdict—failing in which, he could secure a new trial upon the ground that he did not understand the language in which the testimony was given." 26 N.Y.2d at 275, 258 N.E.2d at 198–199, 309 N.Y.S. at 908. However, the court in *Ramos* was openly suspicious of the defendant's need for an interpreter and suggested that

---

[4] Since 1979 the use of interpreters in the federal system has been governed by the Court Interpreters Act of 1978. 28 U.S.C. sec. 1827. That act requires that any waiver of the right to an interpreter be made by the defendant after the court has explained the nature and effect of a waiver. 28 U.S.C. sec. 1827(f)(1); *United States v. Tapia*, 631 F.2d 1207 (5th Cir. 1980). Similarly, in California where the right of a criminal defendant to an interpreter is guaranteed by a specific provision of the State Constitution, the courts have held that there can be no valid waiver of that right without an affirmative showing on the record of a waiver which was intelligent and voluntary on the part of the affected defendant. *People v. Chavez*, 124 Cal. App. 3d 215, 227, 177 Cal. Rptr. 306, 313 (1981).

a court might have the duty to appoint an interpreter *sua sponte* if it were clear that the defendant did not fully comprehend the proceedings. The court stated: "Only when it becomes acutely obvious that the defendant is· exhibiting an inability to understand the trial proceedings or to communicate with his counsel due to a language barrier, should the court take affirmative steps to determine the need of an interpreter." 26 N.Y. 2d at 275, 258 N.E.2d at 199, 309 N.Y.S. at 909.

██ The more recent cases have held that a presumption of waiver from silence does not adequately protect the defendant's rights. In *Negron*, the court stated: "Nor are we inclined to require that an indigent, poorly educated Puerto Rican thrown into a criminal trial as his initiation to our trial system, come to that trial with a comprehension that the nature of our adversarial processes is such that he is in peril of forfeiting even the rudiments of a fair proceeding ·unless he insists upon them." 434 F.2d at 390. Likewise, the Supreme Court of Arizona stated in *State v. Natividad,* 111 Ariz. 191, 194, 526 P.2d 730, 733 (1974) : "A defendant who passively observes in a state of complete incomprehension the complex wheels of justice grind on before him can hardly be said to have satisfied the classic definition of waiver as 'the voluntary and intentional relinquishment of a known right.' " (citations omitted). We conclude that a defendant does not necessarily lose his right to an interpreter by not asserting it. It depends on the facts in each case as to whether the trial court was effectively alerted to the need for an interpreter.

The state acknowledges that "the current trend . . . favors a rule that any waiver of the services of an interpreter must be an intentional relinquishment or abandonment of a known right," but argues that under the principles enunciated by this court in *State v. Albright,*

96 Wis. 2d 122, 291 N.W.2d 487 *cert denied* 449 U.S. 957 (1980) and *In the Interest of T.R.B.,* 109 Wis. 2d 179, 325 N.W.2d 329 (1982) and by the Maryland Court of Special Appeals in *State v. McKenzie,* 17 Md. App. 563, 303 A.2d 406 (1973) the right of a criminal defendant who does not understand English to an interpreter is waivable by his attorney.

In *Albright,* this court discussed the principles governing the waiver of constitutional rights[5] in the course of deciding whether the defendant had waived her right to testify. The court stated that there are certain "fundamental" rights which can only be waived by the defendant personally. This category of rights includes:

"[T]he decision whether to plead guilty, *Boykin v. Alabama,* 395 U.S. 238 (1969); the decision whether to request a trial by jury, *Adams v. U.S. ex rel. McCann,* 317 U.S. 269 (1942); the decision to appeal, *Fay v. Noia,* 377 U.S. 391 (1963); the decision whether to forego the assistance of counsel, *Faretta v. California,* 422 U.S. 806 (1975); and the decision to obtain the assistance of counsel and to refrain from self-incrimination. *Miranda v. Arizona,* 384 U.S. 436 (1966)." 96 Wis. 2d at 130.

These rights "are so fundamental to the concept of fair and impartial decision making" that their waiver must be "an intentional relinquishment or abandonment of a known right or privilege." 96 Wis. 2d at 130–131 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)).

---

[5] The right of a criminal defendant who does not understand English to the services of an interpreter is not a constitutional right in Wisconsin. However, the principles governing the waiver of constitutional rights are equally applicable to the case of waiver of the right to an interpreter. *See, In the Interest of T.R.B.,* 109 Wis. 2d at 197–198, where the fundamental-nonfundamental rights analysis of *Albright* was applied to the waiver of juvenile court jurisdiction.

The court also recognized that there are other rights of the defendant which are entrusted to the defendant's counsel. "When the defendant accepts counsel to conduct the defense, the decision whether to assert or waive certain constitutional rights of the defendant is delegated to the attorney." 96 Wis. 2d at 132.

The court concluded that the right to testify, historically considered to be a tactical decision left exclusively to the determination of the defense counsel, is not among the rights which may only be waived by the defendant personally. Rather, the decision whether to testify should be made by the defendant in consultation with counsel. In the absence of an express disapproval of the defendant on the record, the defendant's right to testify may be waived by his counsel.

In the case of *In the Interest of T.R.B.*, 109 Wis. 2d 179, 325 N.W.2d 329 (1982), this court addressed the question of whether the right to contest waiver of juvenile court jurisdiction is among those fundamental rights which must be waived personally. The court noted that the waiver of juvenile court jurisdiction is a "critically important" decision with significant consequences, but pointed out that the juvenile has no power to decide whether to be tried as an adult or as a juvenile, and therefore the decision not to contest a waiver petition is not tantamount to a decision to waive juvenile court jurisdiction. "Rather, the decision not to contest waiver is akin to the decisions in a criminal trial which courts have generally viewed as tactical decisions to be made by the lawyer: the decisions not to cross-examine witnesses, not to challenge evidence, and not to present evidence," 109 Wis. 2d at 199.

The Maryland Court of Special Appeals discussed the criteria for categorization of constitutional rights into those that may be waived by counsel and those that may be waived only by the defendant personally in the case

of *State v. McKenzie,* 17 Md. App. 563, 303 A.2d 406 (1973). The court stated:

"The classification scheme is sometimes set up in terms of 'fundamental rights' versus 'trial decisions.' It is sometimes set up in terms of 'ends' versus 'means to an end.' The categories are constant, however, whatever their labels or their rationales."

" 'Fundamental rights' is the phrase used to describe those very basic constitutional rights affecting the grand strategy of the contest itself. . . ."

" 'Trial decisions,' on the other hand, is the phrase used to describe lesser constitutional judgments more tactical than strategic in nature, as to which decision must sometimes be made quickly and as to which, regardless of the question of speed, the attorney must make trained value judgments as to beneficial or detrimental impact upon the future course of the trial." 17 Md. App. at 584–585, 303 A.2d at 418. (Footnotes omitted).

The state argues that the right to an interpreter is "subsidiary" to other rights such as the right to present evidence, the right to cross-examine witnesses, and the right to testify. It asserts that the true utility of understanding what is spoken in court lies in the possibility of assisting the attorney in presenting his own witnesses and confronting the witnesses or the state at the testimonial proceedings. If the attorney has authority to waive the rights whose exercise may be assisted by the services of an interpreter, the attorney must have authority to waive the subsidiary right which simply assists those he may waive.

This argument rests on an assumption that granting the defendant the right to decide whether to use an interpreter is equivalent to granting him in a voice in those tactical decisions allocated to his attorney. This is not so. Providing the defendant with an interpreter is not so much a matter of permitting him to participate in the tactical conduct of the trial as it is of providing

both the defendant and the attorney with access to the information on which tactical trial decisions are to be made.

The state also argues that since the rights which the right to an interpreter assists or implicates are not fundamental, the subsidiary right to an interpreter cannot itself be fundamental. Under the state's approach, the right to a trial could also be said to be a "subsidiary right." However, the fact that the right to a trial facilitates the exercise of other rights that are not fundamental has not led the courts to conclude that the defendant's attorney may waive the right to trial by entering a guilty plea. The fact that the right to an interpreter affects the way several other rights may be exercised shows it is a "strategic" decision to be made by the person whose fate lies in the balance rather than a technical, tactical decision to be entrusted to the training and experience of the lawyer.

In *Negron,* the court stated:

"Not only for the sake of effective cross-examination, however, but as a matter of simple humaneness. Negron deserved more than to sit in total incomprehension as the trial proceeded. Particularly inappropriate in this nation where many languages are spoken is a callousness to the crippling language handicap of a newcomer to its shores, whose life and freedom the state by its criminal processes chooses to put in jeopardy." 434 F.2d at 390.

Similarly, the court in *Carrion* after noting the value of an interpreter in aiding the presentation of the defendant's testimony and in cross examination, stated: "The right to an interpreter rests most fundamentally, however, on the notion that no defendant should face the Kafkaesque spectre of an incomprehensible ritual which may terminate in punishment." 488 F.2d at 14.

The presence of an interpreter may aid the fact finding process by providing the defendant's attorney with

the information necessary to effectively present his own evidence and counter the evidence of the state. However, the right to an interpreter is not aimed solely at ensuring the integrity of the outcome; it is also fundamentally a right which safeguards the fairness of the process. The right to an interpreter is the right of a criminal defendant to be treated at trial as a comprehending individual rather than as an insensate object. As stated by the Supreme Court of Arizona in *State v. Natividad,* a trial in which the defendant is unable to understand the language of the proceedings "comes close to being an invective against an insensible object." 111 Ariz. at 194, 526 P.2d at 733. We conclude therefore, that the right to an interpreter is a personal right of the defendant and may not be waived by his attorney.

In considering the question of waiver of the right to an interpreter, a number of courts and law review writers have noted the similarity between the situation of a defendant who does not understand English and that of a mentally incompetent defendant. They have recognized that the right claimed by both is to be present in a meaningful way at trial, and have suggested that the courts' response to right to interpreter claims should follow what has been prescribed for mental incompetency cases.

In *Pate v. Robinson,* 383 U.S. 375 (1966), the United States Supreme Court held that where there is an indication that the defendant may not be competent to stand trial, he has a constitutional right to a hearing to determine the issue. In *Baltierra v. State,* 586 S.W.2d 553 (Tex. Crim. App. 1979) the Texas Court of Criminal Appeals invoked the analogy to the incompetency cases and concluded that a defendant convicted of theft was entitled to a hearing to determine her ability to speak and understand English.

"In a real sense, as well as the right to be physically present, one must also be mentally present to confront and be confronted by and cross-examine witnesses. . .

"Physical presence and competency, essential requisites of confrontation, are personal to the accused and without affirmative action or assent by the accused those imperatives may not be disregarded or ignored by the courts. But even presence and competency do not sufffice to provide confrontation where the accused does not understand the language of the forum." 586 S.W.2d at 556–557. (Citations omitted).

The Court concluded:

"In the absence of the opportunity to be aware of the proceedings and the testimony of the witnesses against her, appellant was denied the constitutional right of confrontation and, that right not being knowingly and intelligently waived, her trial and conviction are null and void." 586 S.W.2d at 559.

Similarly the court in *Negron* stated:

"The Supreme Court held in *Pate* that when it appears that a defendant *may* not be competent to participate intelligently in his own defense because of a possible mental disability, the trial court must conduct a hearing on the defendant's mental capacity. Negron's language disability was obvious, not just a possibility, and it was as debilitating to his ability to participate in the trial as a mental disease or defect. But it was more readily "curable" than any mental disorder. The least we can require is that a court, put on notice of a defendant's severe language difficulty, make unmistakably clear to him that he has a right to have a competent translator assist him, at state expense if need be, through his trial." 434 F.2d at 390–391. (footnotes omitted). *See also,* Chang and Araujo, *Interpreters for the Defense: Due Process for the Non-English Speaking Defendant,"* 63 Cal. L. Rev. 801 (1975).

The First Circuit Court of Appeals, while not relying on the incompetency cases, has likewise placed the bur-

den of informing the defendant of his right to an interpreter on the trial court. *United States v. Carrion,* 488 F.2d at 15. We conclude that due regard for the right of a criminal defendant who does not understand English to the services of an interpreter requires that whenever a trial court is put on notice that the accused has a language difficulty, the court must make a factual determination of whether the language disability is sufficient to prevent the defendant from communicating with his attorney or reasonably understanding the English testimony at the preliminary hearing or trial.[6] If the court determines that an interpreter is necessary, it must make certain that the defendant is aware that he has a right to an interpreter and that an interpreter will be provided for him if he cannot afford one. Any waiver of the right to an interpreter must be made voluntarily in open court on the record.

It is evident from the record in the present case that the defendant did not have suffficient competency in English to be able to reasonably understand the English testimony at his trial. It is also evident from the record that the trial court was made aware of the defendant's language disability. Since the defendant was not informed that he had a right to an interpreter and did not personally waive that right, the judgment of conviction must be vacated and the case remanded to the circuit court for a new trial.

---

[6] A hearing to determine the defendant's ability to understand English need not be elaborate. Normally the court should be able to decide whether an interpreter is necessary by simply asking a few questions. If the court suspects fraud, other testimony may be necessary to establish the extent of defendant's ability to speak English. *See* Chang and Araujo, *Interpreters for the Defense: Due Process for the Non-English-Speaking Defendant,* 63 Calif. L. Rev. 801, 819 (1975).

The final question is whether the rule announced in this case is to be applied retroactively or prospectively only.

Both this court and the United States Supreme Court have recognized three criteria for determining whether a new rule of criminal procedure should be applied retroactively: (1) the effect of the new rule on the fact-finding process; (2) the extent of reliance by law enforcement authorities on the old standards; and (3) the effect on the administration of justice of a retroactive application of the new standards. *State v. Wisumierski,* 106 Wis. 2d 722, 729, 317 N.W.2d 484 (1982); *See, Brown v. Louisiana,* 447 U.S. 323, 328 (1980). Of the three criteria, the first having to do with the effect of the rule on the fact-finding process is the most important. *Wisumierski,* 106 Wis. 2d at 731.

Based on these principles, we conclude that our decision in this case should not be given retroactive effect. Although the presence of an interpreter may enhance the truth finding process, the principle purpose behind the rule that a criminal defendant is entitled to an interpreter is to ensure that the defendant is able to understand the proceedings that may determine his fate. This is not a "rule [that] affect[s] 'the very integrity of the fact-finding process' and avert[s] 'the clear danger of convicting the innocent.'" *Johnson v. New Jersey,* 384 U.S. 719, 727–728 (1966) (citation omitted). Moreover, if indeed a defendant who did not have an interpreter at trial was prejudiced by his attorney's failure effectively to present evidence or to meet the evidence of his accusers, the conviction is challengeable under the claim of ineffective assistance of counsel.

It is not clear to what extent judges in the past have failed to inquire into a criminal defendant's ability to understand English. There is, however, a danger of substantial disruption through challenges to convictions long since completed if we recognize a right to collaterally attack a conviction because the defendant was not informed of his right to an interpreter. This is especially true in view of the fact that an inability to speak English is easily feigned by one whose primary language is not English. We therefore hold that the rule announced in this case is to be prospective only except as to this defendant and to any other cases where the issue is presently on appeal or incorporated in a pending motion for a new trial.

*By the Court.*—The order of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.